UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JOSEPH P. MALLOY                                                                                           PLAINTIFF

v.                                                                                    CIVIL ACTION NO. 3:04CV-39-S

JOHN E. POTTER, POSTMASTER GENERAL                                           DEFENDANT

## MEMORANDUM OPINION

This matter is before the court upon the motion of the defendant, John E. Potter, the Postmaster General of the United States (the "Postmaster General"), to dismiss, or in the alternative, for summary judgment. As stated in our Order issued February 2, 2006 (DN 38), this motion has been converted into one for summary judgment and will be disposed of pursuant to Fed. R. Civ. P. 56. The Postmaster General argues that he is entitled to summary judgment, because the plaintiff, Joseph P. Malloy ("Malloy"), is unable to set forth a *prima facie* case discrimination on any of his claims.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153-61, S. Ct. 1598, 1606-10, 16 L.Ed.2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions

of the dispute at trial. *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592-93, 20 L.Ed.2d 569 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

## BACKGROUND

This is a reverse gender and age discrimination and retaliation case. Malloy contends that the United States Postal Service (USPS) discriminated against him based on sex and/or age when: (1) it issued him letters of warning for failure to follow instructions; and (2) it removed him from his position with the USPS. Malloy also claims that the USPS retaliated against him and subjected him to a hostile working environment for having filed equal employment and Family Medical Leave Act (FMLA) claims.

Malloy was first employed by the USPS in 1991 as a Part-Time Flexible Letter Carrier. He became a Full-Time Letter Carrier in 1995. In 1993, Malloy, while working at the Annshire Station Postal facility in Louisville, Kentucky, made a claim with the Office of Equal Employment Opportunity (EEO), as well as the Office of Workers' Compensation Programs (OWCP). His EEO claim was settled, and he eventually transferred from the Annshire Station and worked in a number of different postal facilities throughout Louisville, Kentucky, before returning to the Annshire Station.

In 1999, the USPS took steps to terminate Malloy for absenteeism. Malloy filed an appeal with the Merit Systems Protection Board (MSPB) challenging his removal on the basis of the USPS having violated the FMLA. Malloy's MSPB appeal was settled, and he entered into a "Last Chance Agreement," which provided for his termination upon any future violations. The Last Chance Agreement ("Agreement") required Malloy to transfer from the Annshire Station to the Lyndon Station, which he did in May 2000. Malloy remained at the Lyndon Station until his termination in 2002.

On June 4, 2001, Malloy was issued a Letter of Warning for failing to follow instructions in connection with the unauthorized use of overtime. He received a second Letter of Warning for a similar violation on July 24, 2001 (collectively "Letters"). In response to these Letters, Malloy, on July 3, 2001, sought EEO counseling, alleging that he had been disciplined because of his age, gender, and prior EEO activity.

On April 4, 2002, Malloy was issued a Notice of Proposed Removal for continued absenteeism and unsatisfactory work perform. He was formally terminated on May 15, 2002, and issued a letter of decision dated the same notifying him of his removal. This suit followed in 2004.

## ANALYSIS

### I. Age Discrimination

To establish a *prima facie* claim of age discrimination under the Rehabilitation Act of 1973, as well as the Age Discrimination in Employment Act of 1967 (ADEA), a plaintiff must show that: (1) he was at least forty (40) years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was qualified for his position; and (4) he was treated differently from those employees under 40. *Tuttle v. Metropolitan Government of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007) (citing *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547 (6th Cir. 2004)); *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004).

It is undisputed that Malloy was over 40 when he received the Letters and offered the Agreement, both of which form the basis for his age discrimination claim. It is, however, disputed whether the Letters or Agreement constitute adverse employment action; whether Malloy was qualified for his position; and whether the USPS issued Letters or offered Agreements to employees under 40.

Malloy must present clear evidence of adverse action to establish this element of his case. *See Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999). To succeed, he must show a "materially adverse change in the terms and conditions of [his] employment." *Id.* (quoting and

adopting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)). This change "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* It "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.*

Neither the Letters nor Agreement meet this threshold. They do not constitute materially adverse changes in the terms or conditions of Malloy's employment. The USPS was fully within its rights to reprimand Malloy for engaging in unauthorized overtime. Furthermore, Malloy freely entered into the Agreement to settle his MSPB appeal. Although the Agreement provided for his removal upon future absenteeism and required him to transfer to the Lyndon Station, neither of these conditions materially altered the terms and conditions of his employment. The USPS would have been within its right to terminate for absenteeism regardless of the Agreement, and Malloy indicates no loss of pay or responsibilities as a result of his move to the Lyndon Station.

However, even if the Letters and Agreement constitute adverse employment actions, Malloy has not shown that he was either qualified for his position or that similar Letters or Agreements were not issued to employees under 40. Malloy provides nothing more than speculation that employees under 40 were not reprimanded with similar Letters for unauthorized use of overtime or offered Agreements to settle MSPB appeals. Bare allegations are not sufficient for setting forth a *prima facie* case. And, although not specifically alleged, to the extent Malloy claims he was terminated in 2002 based on age, the USPS provides legitimate, non-discriminatory reasons for his dismissal: absenteeism and unsatisfactory work performance. Malloy fails to counter with evidence of pretext, while the USPS contends that the majority of letter carries in the Lyndon Station were in their forties and fifties. Malloy's claims of age discrimination fail.

## II. Reverse Gender Discrimination

To establish a *prima facie* case of gender discrimination, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) members outside his protected class were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Leadbetter v. Gilley*, 385 F.3d 683, 690 (6th Cir. 2004); *Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003). In cases of *reverse* gender discrimination, the plaintiff satisfies the first element by demonstrating "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Pierce v. Commonwealth Life Ins.*, 40 F.3d 796, 801 (6th Cir. 1994).

Malloy fails to satisfy the first prong. He provides only speculation that female employees carried less mail or were given shorter routes. These speculations are insufficient to establish the USPS as being that unusual employer who discriminates against males. Likewise, mere speculations do not establish that females were treated more favorably. Moreover, we have already concluded that the Letters and Agreement do not constitute adverse employment actions. And, again, even if Malloy's termination is considered an adverse action, the USPS provides legitimate, non-discriminatory reasons for that termination (absenteeism and unsatisfactory work performance), while Malloy does not present evidence demonstrating the USPS' reasons were merely pretext to discriminate. Malloy's claims of gender discrimination fail.

## III. Retaliation

To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he engaged in protected activity; (2) his employer knew of that protected activity; (3) his employer thereafter took adverse employment action against him or subjected him to severe or pervasive retaliatory harassment; and (4) there was a causal connection between his protected activity and the adverse

employment action or retaliatory harassment. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792-93 (6th Cir. 2000).

Malloy asserts three events as constituting protected activity: his 1993 EEO filings; his 2001 EEO filing; and his 1999 FMLA claim made in conjunction with his MSPB appeal. The Postmaster General does not dispute the EEO filings as being protected activity. He, however, argues that we are without jurisdiction to hear Malloy's claim of retaliation based on the MSPB appeal. The Postmaster General contends that "the regulations which govern discrimination claims provide that [a fedearl court's] jurisdiction to hear matters under Title VII of the Civil Rights Act and the Age Discrimination in Employment Act (ADEA), such as what the Plaintiff has raised in his complaint, do not include claims involving the MSPB (unless a claim of discrimination is also raised such as in a mixed-motive case) or the OWCP." He cites 29 C.F.R. § 1614.101(b) in support of his argument. That provision, however, merely states that the federal government shall not retaliate against an employee for filing a discrimination claim. Furthermore, our review of the applicable regulations fails to reveal anything that suggests an employee who is subject to an adverse employment action or severe harassment as a result of having filed a claim with the MSPB is subsequently unable to file suit in federal court for retaliation. Malloy's FMLA claim made in connection with his MSPB appeal constitutes a protected activity, as do his EEO filings.

However, Malloy must still establish the existence of adverse action or retaliatory harassment. Again, any adverse action must have resulted in a material change in the terms and conditions of Malloy's employment. Meanwhile, any harassment must be sufficiently severe or pervasive to create a work environment that the reasonable person would perceive as hostile. *Akers v. Alvey*, 338 F.3d 491, 498 (6th Cir. 2003). Basically, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult . . . ." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000).

As stated earlier, the Letters and Agreement were not adverse actions. Even if there were, the Letters and Agreement were issued seven (7) years after Malloy's 1993 EEO claim. Malloy is required to demonstrate that there is a causal connection between the adverse action and his engaging in protected activity. To show a causal connection, Malloy must either present direct evidence of the connection, or offer proof of "knowledge coupled with a closeness in time that creates an inference of causation." *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000). The 7 year gap between Malloy's 1993 EEO activity and the Letters and Agreement does not create the necessary temporal connection. And, although the Letters were issued approximately two years after Malloy filed his appeal with the MSPB, this is still not close enough to show a causal connection.

Malloy also alleges he was harassed by management while employed at the Lyndon Station. Through the affidavit of a co-worker, Dennis E. Marsee, Malloy argues the following were instances of retaliation:

> (1) One day before returning from an extended leave period, the order-of-delivery of his route was changed without any input from him.
>
> (2) During a special route inspect, he was not allowed to process his nixies at the end of each day. The nixies were allowed to just accumulate under the case.
>
> (3) When he tried to show a supervisor some delayed certified letters that another carrier had hidden beneath some nixies under the case, the supervisor would not allow him the courtesy of completing a sentence and ordered him to get back into his case.

These allegations of harassment, however, are not so severe or pervasive that the reasonable person would consider his work environment hostile.

The only other potential adverse action to which Malloy was subjected is his termination in 2002. This, however, is not temporally connected to any protected activity. Although Malloy filed a EEO claim in June 2001, he was not terminated until May 2002. And, even if these two events are

- 7 -

temporally connected, the USPS, as previously explained, provides legitimate, non-discriminatory reasons for removing Malloy -- absenteeism and unsatisfactory work performance. Malloy presents no evidence demonstrating that those reasons were actually a pretext for the USPS to retaliate. Malloy's claims of retaliation fail.

Malloy cannot set forth a *prima facie* case on any of his claims: age discrimination, gender discrimination, retaliation. Thus, summary judgment dismissing his case is appropriate. A separate opinion will be entered herein this date in accordance with this opinion.